# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### FEBRUARY SESSION, 1998

FILED

May 28, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9706-CR-00216** |
| | ) | |
| Appellee, | ) | |
| | ) | **KNOX COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. RICHARD BAUMGARTNER,** |
| **REGINALD SUTTON,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(HARASSING COMMUNICATIONS)** |

FOR THE APPELLANT:      FOR THE APPELLEE:

**MARK E. STEPHENS**
District Public Defender

**JAMIE L. NILAND**
Assistant Public Defender
1209 Euclid Avenue
Knoxville, TN 37921

**JOHN KNOX WALKUP**
Attorney General & Reporter

**SANDY C. PATRICK**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**RANDALL E. NICHOLS**
District Attorney General

**MARSHA SELECMAN**
Assistant District Attorney General
City-County Building
Knoxville, TN 37902

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Reginald Sutton, appeals from the sentencing order of the Knox County Criminal Court. Defendant pled guilty to one count of making harassing telephone calls. Following the sentencing hearing, the trial court sentenced Defendant to serve eleven (11) months and twenty-nine (29) days, to be served at seventy-five percent (75%). Defendant appeals the sentence, arguing that it does not conform to the requirements of the Criminal Sentencing Reform Act of 1989, and that the sentence is excessive and should be reduced on appeal or remanded for a new sentencing hearing. We affirm the judgment of the trial court.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment.

Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law; and made findings of fact adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

At the sentencing hearing, Doris Davenport, the victim, testified that she and the Defendant were living together on July 26, 1995, and it was their son's birthday. Davenport had been requesting that the Defendant move out of her home because he "has kept [her] going through a lot of changes." When she got home from work that day, the Defendant came in her house and refused to give her his keys to the house. Defendant picked up the telephone, and Davenport demanded to know who he was calling. Defendant replied, "None of your damn business." Davenport hung up the telephone, and Defendant spit in her face. Davenport told Defendant, "That is it. Get out."

When Davenport turned her back and walked toward the kitchen, Defendant grabbed her by her hair and threw her in the floor. Davenport described that Defendant held a knife in his hand and cut her face while beating her in the floor. Davenport stated that her two (2) year old son was watching the altercation, and she kept repeating, "Do not beat me in front of my children." Defendant kept beating her and said, "I am going to kill you, bitch." Davenport stated that she did not know what

made him "snap back," but that he said, "Oh . . . look what you have made me do."

Defendant grabbed a towel, wiped the floor and then her face because there was blood everywhere in the kitchen. He stated, "I am going to get the damn police," and ran out the door. Davenport did not see the Defendant after that, and he did not call the police. Davenport called her brother who called an ambulance. She was treated at the hospital where she received stitches. Davenport displayed her remaining facial scars to the court. She stated that she took a warrant out against the Defendant the following day.

Davenport stated that while she had formerly been convicted of armed robbery and has been on parole, she has changed her life and did not feel that she deserved to be treated this way. Following the above-described incident, Davenport received harassing messages from the Defendant on her answering machine. These messages were played for the court. Davenport described Defendant as being very insecure and previously accusing her of having an affair with a man at work. She believed that Defendant is "going to hurt somebody . . . and feels like he don't [sic] have no respect for the Court or nobody else." Davenport stated that Defendant could have killed her and felt like he "should not get a pat on the back [probation] for what he did."

On cross-examination, Davenport admitted that she had been drinking the day of the assault, but stated that she was not drunk.

The Defendant stated that he dated Davenport for over two (2) years and that they had a child together. On the day of the assault, Defendant got off from work and drove to Davenport's home, where he was living at the time. He was on the phone with his older son who called to ask for a ride home when Davenport came out of the kitchen and asked who he was talking to. When he said that it was his son, Davenport told him, "That is a lie. That is a girl." Davenport hung up the telephone and started calling Defendant names, then she returned to the kitchen. Defendant followed her into the kitchen and asked why she was upset. Defendant believed she had been drinking and was trying to be reasonable as he believes she is a violent person.

Davenport did not answer Defendant's question, but started cursing at him and spit in his face. Defendant spit back in her face, and Davenport reached onto the counter for a knife. Defendant took the knife out of her hand, and the two started fighting. He admitted that Davenport was bleeding, so he tried to wipe off her face. After Defendant tried to help Davenport clean up, she went into the living room and called her brother. Defendant stated that he had seen the police drive by, so he told her he would get the police.

When questioned as regarding the harassing phone calls, Defendant stated that at the particular time he was upset with Davenport because he did care for her and was upset that she had him put in jail for protecting himself. Defendant stated that he was trying to let Davenport know that what she did to him was very wrong and that he wanted to take a warrant out against her.

The trial court sentenced the Defendant to serve eleven (11) months, twenty-nine (29) days at a rate of seventy-five percent (75%) release eligibility date in the Knox County Penal Facility. If Defendant chose to attend the Domestic Violence program offered by the Knox County Sheriff's Department while incarcerated, the trial court would consider an early release upon successful completion of the program. The trial court made the following statement:

> Well, you know, we have heard different versions of what happened on July 26, 1995. I don't know that, as in a lot of cases, we will ever know exactly what happened out there and exactly what precipitated it, but we know one thing for certain. That, as a result of that incident, Ms. Davenport was beaten about the face. She was cut. She has a scar on her face, and this is a classic domestic violence, and it is a very, very serious problem that we have in our society.

> For years, I think we swept it under the rug, or we kept it quiet. It was a public embarrassment to the people involved in it. So they chose to keep it quiet, and fortunately, I think that is changing. I consider it to be one of the most despicable and concerning aspects of our -- one of the problems we have in our society today, and to the extent that I can do anything to have a positive effect on it, I intend to do that.

> I have listened to this evidence here today. I have considered the pre-sentence report. I have considered the conditions of the Sentencing Act here, again, including in particular the necessity to avoid depreciating the seriousness of the offense. These things don't happen just accidentally. It is a pattern. It is a course of conduct.

> Ms. Davenport, you are right. The fact that you had prior convictions and are on parole doesn't mean that anybody has got the right to beat you. Mr. Sutton is currently, he says, employed, although here at the end, that he is not working because of some medical condition. He is forty-one years old. He is living with his mother. His expenses in life are an automobile payment, and an amount he claims he is paying to his mother as rent.

> I think you need to spend some time in custody, Mr. Sutton. I am going to order that Mr. Sutton serve this sentence. I am going to order -- I can't order, but I am going to advise him that I think it is in his best interest that he attend and complete the Domestic Violence Program offered by the Knox County Sheriff's Department at the Detention Facility.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302 which provides in part that the trial court shall impose a specific sentence

consistent with the purposes, principles and goals of the 1989 Criminal Sentencing Reform Act. See State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the Defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). In addition to setting the sentence based on the principles, purposes, and goals of the Act, the court must set a release eligibility percentage which cannot exceed seventy-five percent of the imposed sentence. Id. at (d); Palmer, 902 S.W.2d at 393. Alternatively, the trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e).

Defendant argues that the only evidence the trial court considered in sentencing him was evidence of another crime. The trial court specifically stated within the record that it considered the presentence report, the conditions of the Sentencing Act, and, in particular, the need to avoid depreciating the seriousness of this type of offense. Defendant did not object to the evidence of another crime during the sentencing hearing. The record reflects that the parties and the trial court agreed in the plea agreement that the victim would be allowed to describe the details of the assault as well as the harassing communications during the sentencing hearing.

Defendant also complains that the sentence is excessive. Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to the presumption of a minimum sentence. State v. Creasy,

885 S.W.2d 829, 832 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1994). Defendant received the maximum sentence as allowed by law due to the circumstances surrounding the offense and his prior record. Tenn. Code Ann. § 40-35-114(1) and (9). Although the discussion of applicable mitigating and enhancing factors would be good for our review, it is not a requirement that those factors be set forth explicitly within the record. State v. McKnight, No. 01C01-9509-CC-00313, slip. op. at 2, Rutherford County (Tenn. Crim. App., at Nashville, June 11, 1996) perm. to appeal denied, (Tenn. 1997) (citations omitted). In addition, the trial court provided for possible early release so long as the Defendant completed a program on domestic violence.

Finally, the Defendant argues that the sentence should be reduced or remanded for a new sentencing hearing. As we have found no error in the trial court's sentencing as according to the Sentencing Act under our de novo review, then we decline to modify the sentence imposed. This issue is without merit.

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
JERRY L. SMITH, Judge


_____
WILLIAM B. ACREE, JR., Special Judge

-8-